HARE *v.* GENERAL CONTRACT PURCHASE CORPORATION.

5-133                                                   262 S. W. 2d 287

Opinion delivered June 15, 1953.

Rehearing denied December 21, 1953.

292

*P. L. Smith,* for appellant.

*Guy B. Reeves,* for appellee.

*Tilghman E. Dixon, amicus curiae.*

J. SEABORN HOLT, J. Clyde Hare, appellant, after the opinion in *Hare* v. *General Contract Purchase Corp.* by this court May 26, 1952, 220 Ark. 601, 249 S. W. 2d 973, had become final June 30, 1952, filed a complaint in August, 1952, in the nature of a Bill of Review in the Pike Chancery Court. He sought to have the former decree set aside for alleged error of law apparent on the face of the decree. He alleged, in effect, that although an interest rate of more than 10% had been charged contrary to Art. 19, § 13 of the Constitution of Arkansas, the Court had refused to cancel the note and contract involved, and that appellant's right to the equal protection of the law had been violated, and he had been denied due process of law contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States. Appellee filed motion to quash, alleging that the relief prayed had been adjudicated and pleaded *res judicata* of all issues presented. The trial court sustained appellee's contention and found that the matter was *res judicata* and dismissed appellant's complaint. This appeal followed.

We hold that the action of the trial court was correct and therefore must be affirmed.

Our opinion in the Hare case was based on facts (hereinafter set out) which, in effect, established that a time price contract had been entered into between the purchaser, Hare, and the dealer, Meeks, which contract was later duly assigned and transferred to appellee, General Contract Purchase Corporation. We there stated the facts to be:

"Appellant, Clyde Hare, purchased a used truck from Earl Meeks, a second-hand automobile dealer in Arkadelphia, for $1,750. After making a cash payment of $100, and trading in a car for a credit of $500, the balance due by Hare to Meeks was $1,150. To handle this balance, Hare executed to Meeks a title retaining contract and note for $1,439.13. The note and contract were on forms supplied Meeks by appellee, General Contract Purchase Corporation; and Meeks and Hare understood that the said $1,150 was increased $289.14 to take care of insurance, interest and *service charges* on the delayed payments; and that the note for $1,439.13 was payable $68.53 per month for twenty-one months.

"A day or two after the completion of the trade between Meeks and Hare, Meeks transferred the title retaining contract and note to the General Contract Purchase Corporation, without recourse, and received $1,150. Hare made six of the monthly payments to General Contract Purchase Corporation."

"*Service Charges*" referred to above in this language "$289.14 (added to the $1,150) to take care of insurance, interest and service charges, etc.," included an increased price because of deferred time payments. This construction is equally applicable to the introductory language in footnote 5, wherein an interest rate of 11.5% is mentioned. We further said:

"Thus, we come to appellee's final defense, which, as previously stated, is that the $140.89 was not only for interest, but for a service charge in connection with the sale of the truck. The balance on the truck was $1,150, and the insurance premium was $148.24, so the debt was $1,298.24. But the note was for $1,439.13. The question is whether such interest and service charge, which when added together exceed 10%, make the transaction usurious. It is clear: (a) that Hare and Meeks agreed that $289.13 would be added to the $1,150, in order to cover insurance, interest, and *carrying charges* (service charges); (b) that the parties thought the $289.13 listed as 'time price differential (including any insurance),' was a perfectly legal addition, and; (c) that

it was not until months after the trade was made and after Hare claimed usury, that it was ascertained that the insurance premium was $148.24, and the interest and other charges were *$140.89*.

"The evidence fails to show that Meeks acted as the agent of General Contract Purchase Corporation in this case, so there was a sale by Meeks to Hare, and the transfer of the note and papers by Meeks to General Contract Purchase Corporation. The question is whether such 'time price differential' is legally permissible against the plea of usury even when there is a sale on which to predicate such increased price.

"In a long line of cases, we have permitted the seller, under one guise or another, to do exactly what was done in the case at bar, and we have permitted the transferee of the paper to recover in just such a situation. (Citing many cases.)

"In the case at bar, the parties dealt on the strength of the aforesaid holdings, which have become a rule of property, and we must not overrule these cases retroactively. Therefore, insofar as the case at bar is concerned, it must be affirmed on the strength of our previous holdings."

Accordingly, the decree is affirmed.